**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARGARET GANDOLFO,        )
                                        )   3:08-cv-00147-LRH (VPC)
      Plaintiff,             )
                                        )
  vs.                              )   **REPORT AND RECOMMENDATION**
                                        )   **OF U.S. MAGISTRATE JUDGE**
MICHAEL J. ASTRUE,           )
Commissioner,                   )
Social Security Administration, )
                                        )   May 19, 2009
     Defendant.            )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal of the Commissioner's decision (#9). Defendant opposed and filed a cross-motion to affirm (#12). For the reasons set forth below, the court recommends that plaintiff's motion for reversal (#9) be denied and defendant's cross-motion to affirm (#12) be granted.

**I. ADMINISTRATIVE PROCEEDINGS**

On October 6, 2004, plaintiff Margaret Gandolfo ("plaintiff") filed an application for Social Security disability insurance benefits (AR 24). Plaintiff alleged disability based on carpal tunnel syndrome in both hands (AR 370). Plaintiff's claim was denied initially (AR 351-355) and on reconsideration (AR 345-47). On October 2, 2006, a hearing was held before Administrative Law Judge ("ALJ") Peter F. Belli, where plaintiff was represented by attorney Dennis A. Cameron (AR 21-34 (opinion); AR 581-617 (transcript)). The ALJ filed a written opinion on March 26, 2007, in which he upheld the denial of plaintiff's claim. Plaintiff requested administrative review on April 11, 2007 (AR 18), and the Appeals Council denied review on

February 1, 2008, making the ALJ's decision final (AR 10-13). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on March 26, 2008 (#1).

## II. BACKGROUND

Plaintiff was born on November 8, 1950, and was fifty-five years old at the time of her hearing (AR 588). Plaintiff completed high school and received training and a certification in data entry (AR 588-89). Plaintiff's last employment was in 2003 as an accounts receivable clerk (AR 589-90). Plaintiff's other past employment includes a data entry clerk, office manager, and cashier (AR 589-94). Plaintiff alleges that she became disabled on October 7, 2003, due to degenerative disc disease of the cervical spine, cervical stenosis, mild degenerative disc disease of the lumbar spine, a history of bilateral carpal tunnel syndrome, a history of plantar fasciitis, and obesity (#9, p. 2). The ALJ found the plaintiff not disabled because he found she was capable of performing her past relevant work (AR 27). Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since October 7, 2003, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, cervical stenosis, mild degenerative disc disease of the lumbar spine, a history of bilateral carpal tunnel syndrome, a history of plantar fasciitis, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit eight hours of an eight-hour workday (with normal breaks); stand/walk six hours of an

       eight-hour workday (with normal breaks); and occasionally stoop, crouch, kneel, and crawl. She cannot climb ladders, ropes or scaffolds. The claimant can frequently look up or down, but cannot do so constantly. She cannot perform constant fine fingering with the right dominant hand. She should not work at unprotected heights or around dangerous machinery.

6.     The claimant is capable of performing past relevant work as an accounting clerk, collection clerk, and office manager. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2003 through the date of this decision (20 CFR 404.1520(f)).

(AR 27-34).

### III. STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

3

## IV.  DISCUSSION

Plaintiff argues that the ALJ improperly rejected the opinions of two of plaintiff's treating physicians and failed to properly assess plaintiff's RFC (#9, p. 4-8). Defendant's position is that the ALJ properly rejected the opinions of the two physicians. The ALJ explained in detail why he did not accept these two doctors' opinions and the ALJ's rejection is supported by substantial evidence in the record (#12, p. 4-9). Defendant also contends that the ALJ's RFC assessment is valid because his conclusions are supported by substantial evidence in the record. *Id*. p. 10.

### A.  Legal Framework

Pursuant to the SSA, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.  The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work.  *Id.*  If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

### B.  The Opinions of Plaintiff's Treating Physicians

Plaintiff contends that the ALJ improperly discredited the opinions of Drs. Walker and Miyagawa, two of plaintiff's treating physicians, because his reasons for discrediting were not based on substantial evidence in the record (#9, p. 4). Plaintiff argues that because the two opinions are almost identical, they serve to authenticate each other. *Id*. p. 5. Plaintiff is particularly concerned that the ALJ rejected these physicians' opinions related to plaintiff's expected rate of absenteeism. Both doctors found that plaintiff would likely have a rate of

absenteeism in excess of three times per month; however, the ALJ found that plaintiff's symptoms would not warrant this level of absenteeism. Plaintiff asserts that "in making this determination, the ALJ substitutes his own opinion for the opinions of two qualified treating doctors...without pointing to any substantial evidence in the record which would support a finding that the Plaintiff could be expected to be absent less often than her doctors would anticipate." *Id*. p. 6. Additionally, plaintiff argues that she has a limited ability to walk, which precludes the performance of light work and makes her unable to perform her past relevant work. Further, plaintiff contends that she cannot sit for long periods of time, which precludes the performance of sedentary work and makes her unable to perform any other work that exists in significant numbers in the national economy. *Id*. p. 6-7. Plaintiff stipulates that the ALJ fairly and accurately summarized the material medical evidence of the record in this case. *Id*. p. 2.

Defendant's position is that the ALJ properly rejected the opinions of Drs. Walker and Miyagawa because the ALJ found the opinions to be contradicted, and he provided specific and legitimate reasons for his rejection (#12, p. 4-5). Specifically, defendant notes that "the ALJ determined that the doctors' limitations were not supported by the objective medical evidence..., [or] by [the] doctors' own clinical findings." *Id*. p. 5-6. Further, "the ALJ rejected the extreme limitations because they were inconsistent with the conservative and sporadic treatment Plaintiff received." *Id*. p. 6. Therefore, the ALJ's rejection is supported by substantial evidence in the record. *Id*. Additionally, defendant maintains that the ALJ has no duty to accept a medical opinion merely because it is held by two physicians. *Id*. p. 9. Finally, it is the ALJ's duty to determine plaintiff's limitations based on the record as a whole, and "the ALJ is not bound to accept unsupported conclusions simply because they came from a treating source." *Id*.

The ALJ found that plaintiff has the RFC to "lift, carry, push and pull 20 pounds

5

occasionally and ten pounds frequently; sit eight hours of an eight-hour workday (with normal breaks); stand/walk six hours of an eight-hour workday (with normal breaks); and occasionally stoop, crouch, kneel, and crawl....She cannot perform constant fine fingering with the right dominant hand" (AR 27). The ALJ stated that in making this finding, he considered all symptoms based on a two-step process that analyzes "whether there is an underlying medically determinable physical or mental impairment" and evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities" (AR 28). The ALJ summarized plaintiff's testimony at the hearing, and determined that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible considering the evidence of record (AR 29). The ALJ then summarized, in detail, plaintiff's medical history with regard to her complaints of disability (AR 29-33).

First, the ALJ discussed Dr. Miyagawa's treatment and opinions (AR 29). Plaintiff began seeing Dr. Miyagawa in December 2003 as a primary care physician. Plaintiff did not complain of neck or back pain or of upper extremities problems until June 2004. Dr. Miyagawa diagnosed plaintiff with right arm tendinitis, and told her to avoid heavy lifting and repetitive activities with her right arm and wrist. *Id*. Dr. Miyagawa also diagnosed and treated plaintiff for plantar fasciitis between June and August 2004. When plaintiff complained of joint pain in her elbows and hips in September 2004, Dr. Miyagawa referred her for physical therapy, an MRI, and for a neurological consultation. *Id*. Dr. Miyagawa referred plaintiff to Dr. Walker, a neurologist. Dr. Walker recommended physical therapy rather than surgery to help plaintiff with her neck pain and right upper extremity pain with periodic weakness (AR 30). Plaintiff returned to Dr. Miyagawa in June and July 2005, and complained of a recent exacerbation of neck pain. Dr. Miyagawa

referred plaintiff for physical therapy. He also noted that her condition had been stable since December 2004 before this recent flare-up. *Id*. Plaintiff saw Dr. Walker again in November 2005, a year after she had first visited him.

The ALJ also discussed treatment that plaintiff received from numerous other doctors, including Dr. Joseph Chambers, Dr. David Dapra, and consultants of Disability Determination Service (AR 30-32). The ALJ summarized plaintiff's medical complaints and treatment as follows:

> In summary, the claimant has had intermittent complaints and treatment for plantar fasciitis, neck pain, upper extremities weakness, and more recently back pain. However, her allegations of very restrictive ongoing limitations in lifting, handling, sitting, standing and walking, as well as the need to lie down several times per day are not warranted by the evidence which shows intermittent complaints and generally conservative treatment....
>
> Thus, the record shows that the claimant was seen for various disorders off and on, but the objective findings were generally normal or minimally abnormal. In addition, when she had an exacerbation of symptoms, they were readily treated with medication, physical therapy, and simple surgery. It is also noted that on occasion, there was some evidence of "give away" findings or complaints of weakness or numbness that followed no specific dermatomal pattern.

(AR 32).

The ALJ discredited numerous portions of Drs. Miyagawa's and Walker's medical source statements (AR 31-32). He summarized the medical source statements of each doctor in turn:

> In August 2006, Dr. Walker completed a medical source statement which would preclude the claimant from performing even sedentary work on a full time basis. He based this on her diagnoses of low back pain, neck pain, and carpal tunnel syndrom. He stated that she could lift no more than 10 pounds, stand/walk less than two hours total in a work day (no more than five minutes at a time), sit two hours total in a work day (no more than five minutes at a time). He did not assess manipulative limitations, but stated that a functional capacity evaluation was required to assess this function. He indicate[d] that the claimant would likely be absent from work more than three days per month.

> In September 2006, Dr. Miyagawa completed a medical source statement assessing standing, walking, sitting, and lifting limitations similar to those assessed by Dr. Walker. He indicated that the limitations were due to chronic low back pain, cervical pain, irritable bowel syndrome, and carpal tunnel syndrome. He also stated that the claimant had postural and manipulative limitations. She was limited in her ability to type or use her hands.

*Id*.

The ALJ then went on to describe why he was discrediting these opinions as to each of plaintiff's physical limitations. First, the ALJ rejected Drs. Miyagawa and Walker's assessments of extreme standing and walking limitations (AR 33). He stated that the doctors "based these limitations on the claimant's neck and upper extremity disorders, and on mild back pain with no radiculopathy; disorders which would not result in severe standing and walking limitations. Their treatment records and diagnoses provide no basis for such extreme standing and walking limitations." *Id*. Second, the ALJ rejected the doctors' assessments that plaintiff could lift no more than ten pounds. He noted that Dr. Miyagawa had earlier precluded only "heavy lifting," and that clinical findings had "generally shown full strength and little or negligible evidence of neurological changes." *Id*. Because of this, the ALJ determined that plaintiff's back impairment was minimal and did not warrant such restrictive lifting limitations. *Id*. Third, the ALJ rejected Dr. Miyagawa's opinion regarding plaintiff's manipulative limitations. The ALJ notes that he "included some mild manipulative limitations and mild neck posture limitations in consideration of the claimant's history of carpal tunnel syndrome. More restrictive limitations are not warranted based on the essentially normal clinical findings and good response from carpal tunnel release surgery." *Id*. Finally, the ALJ rejected the doctors' opinions regarding plaintiff's estimated rate of absenteeism. The ALJ noted that he found no basis for the doctors' conclusion that plaintiff would likely miss three days of work or more per month due to her impairments. *Id*. The ALJ

stated:

> The claimant may occasionally have period[s] in which she misses work, such as during a very severe exacerbation of one of her disorders. But the record does not show that the claimant has pain exacerbations at such a frequency or degree that would warrant a projection of such a high degree of absenteeism. Thus, the opinions provided by Dr. Walker and Dr. Miyagawa are given little weight. Although they are treating sources, the extreme limitations they assessed are rejected because they are inconsistent with the level of treatment described in their treatment records. It is also inconsistent with the often normal clinical findings and the fact that the claimant sought only intermittent treatment with long periods of no treatment for her various disorders.

*Id*.

Cases within the Ninth Circuit distinguish between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted). "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) *citing* SSR 96-2p.

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); however, an ALJ may not reject the treating physician's opinion if it is contradicted by other physicians' opinions unless the ALJ "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*., *quoting Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also Lester,* 81 F.3d at 830. "If the treating physicians' opinions are uncontroverted, those reasons must be clear and convincing." *Smolen*, 80 F.3d at 1285.

The court finds that the ALJ set forth specific, legitimate reasons, that are based on substantial evidence in the record, for rejecting Dr. Miyagawa's and Dr. Walker's opinions. The ALJ explained that the severe limitations Drs. Miyagawa and Walker placed on plaintiff's ability to stand and walk were contradicted by their own treatment records and diagnoses (AR 33). The ALJ also rejected the physicians' opinions because plaintiff did not seek consistent treatment for her physical maladies, and the treatment provided by Dr. Miyagawa and Dr. Walker was often conservative and appeared to alleviate plaintiff's symptoms. The ALJ also found such severe limitations to be inconsistent with the "often normal clinical findings." *Id*. These findings are supported by substantial evidence in the record.

As described previously, the ALJ summarized plaintiff's medical history from 2003 to 2006 in detail. His discussed the medical treatment and diagnoses she received for her carpal tunnel, neck and back pain, and plantar fasciitis. He set out how the opinions Drs. Miyagawa and Walker gave in the "medical opinion re: ability to do work-related activities (physical)" (AR 570-575) differed from their previous opinions, diagnoses and treatment plans. For example, the doctors stated that plaintiff could stand and sit less than two hours in an eight hour work day and would have to change position every five minutes (AR 570 and 573). However, the ALJ noted that even when plaintiff had an exacerbation of her symptoms, "they were readily treated with medication, physical therapy, and simple surgery" (AR 32). Both Dr. Walker and Dr. Miyagawa have generally described plaintiff's neck and back problems as mild. Neither doctor has recommended that plaintiff have surgery to relieve her neck or back pain. As late as May 31, 2006, Dr. Walker stated that he did not think plaintiff needed surgery to alleviate her back pain (AR 490). As for plaintiff's carpal tunnel disease, Dr. Miyagawa noted that plaintiff would have difficulty reaching, handling and fingering due to her carpal tunnel (AR 574). In 2004, Dr.

Miyagawa noted that plaintiff had a history of carpal tunnel disease, but that it was "currently stable" (AR 435). Dr. Walker performed surgery on plaintiff's carpal tunnel in January 2006 (AR 494-96). In May 2006, Dr. Walker noted that plaintiff's numbness was improving and that she only had a little pain in the palm of her hand (AR 490). The ALJ took plaintiff's limitations caused by her symptoms of carpal tunnel disease into account when he established her RFC.

The ALJ gave specific and legitimate reasons for rejecting Drs. Miyagawa's and Walker's opinions. The doctors' opinions were contradicted by their own diagnoses and treatment records. They prescribed only conservative treatment measures to alleviate plaintiff's symptoms. The doctors described their treatment as often having a positive effect on plaintiff's pain level, and plaintiff did not consistently seek treatment for her maladies. Additionally, the doctors' opinions were inconsistent with the objective clinical findings. The ALJ's reasons are supported by substantial evidence in the record, which the ALJ fully set forth in his decision (AR 21-34).

### C. Plaintiff's Residual Functional Capacity

Plaintiff next contends that the ALJ failed to properly assess her RFC (#9, p. 7). Plaintiff argues that the ALJ failed to consider all of plaintiff's symptoms because he improperly rejected the treating physician's opinions, as discussed in section II.B above. Defendant asserts that "the ALJ is not required to include limitations he finds are unsupported by the record in either the hypothetical question he presents to the vocational expert or, by implication, in his RFC finding" (#12, p. 9-10). Defendant maintains that there is substantial evidence in the record to support the ALJ's rejection of the physicians' opinions. *Id*. p. 10.

The regulations define residual functional capacity ("RFC") as the most a plaintiff can still do despite her physical, mental, non-exertional, and other limitations. 20 C.F.R. § 404.1545; *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). If, in determining the plaintiff's RFC,

the ALJ applied the proper legal standards and his decision is supported by substantial evidence in the record, the court will affirm the ALJ's findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "It is the responsibility of the ALJ, not the claimant's physician to determine the residual functional capacity." *Vertigan*, 260 F.3d at 1049.

As set forth above, the ALJ properly rejected the opinions of Dr. Miyagawa and Dr. Walker. The ALJ's determination of plaintiff's RFC is supported by substantial evidence in the record. The ALJ was not required to incorporate the doctors' opinions into his RFC because he properly discounted them and based his RFC decision on plaintiff's medical records as a whole. It is the responsibility of the ALJ, not plaintiff's physicians to determine the RFC. As the court previously stated above, the ALJ was under no obligation to accept the medical opinions of plaintiff's treating physicians (AR 27-34). The ALJ wrote a detailed summary of plaintiff's medical history and a detailed analysis of the reasons for his findings. The ALJ properly assessed plaintiff's RFC.

## V.  CONCLUSION

Based on the foregoing, the court recommends that plaintiff's motion for reversal of the Commissioner's decision (#9) be **DENIED** and defendant's cross motion to affirm (#12) be **GRANTED**.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

      2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal of the Commissioner's decision (#9) be **DENIED** and defendant's cross motion to affirm (#12) be **GRANTED**.

**DATED:** May 19, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**